## BIRDWELL v. KIDD.

No. 6568.

Court of Civil Appeals of Texas. Texarkana.

May 3, 1951.

Rehearing Denied June 7, 1951.

Royce Whitten, Tyler, for appellant.

Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, for appellee.

HALL, Chief Justice.

This is an action in trespass to try title brought by appellee, plaintiff below, against appellant, defendant below, and concerns a a tract of 20 acres of land, a part of the Chirino Survey in Smith County, upon which appellant resides as her homestead. The trial was to a jury and at the conclusion of the evidence the trial court instructed a verdict for appellee and judgment was accordingly entered for him.

Appellant asserts that an issue of fact was raised by the evidence with respect to each of her contentions.

The indebtedness out of which this contest arises had its inception in a mechanic's lien and note executed on August 30, 1919, by appellant and her husband, Albert Birdwell, now deceased, to Joe Smith, later transferred to T. C. Williams, also deceased, husband of Mrs. Margaret Williams. The note and lien were renewed from time to time until September 2, 1940. On this last date a deed of trust was executed by Albert and Lula to Ewell C. Williams for the benefit of Margaret Williams, surviving wife and sole devisee of T. C. Williams. The deed of trust recites that it was given in renewal and extension of the balance due on the mechanic's lien debt and for taxes paid at the request of appellant and her deceased husband. The property involved was sold under the deed of trust at trustee's sale on September 5, 1944, at which sale appellee, H. E. Kidd, became the purchaser. It is undisputed that Kidd bought the property for the benefit of Mrs. Williams, the owner and holder of the indebtedness, and that Kidd is now holding the property for Mrs. Williams.

With respect to the first point advanced by appellant, that is, that the deed of trust was not properly acknowledged by her, the facts are without dispute that appellant and her husband, Albert Birdwell, appeared before the notary public and signed the deed of trust. The certificate of acknowledgment of the notary is in proper form. The appellant sought to overcome the presumed regularity of the acknowledgment of the deed of trust by oral testimony from appellant and the notary. Appellant testified in substance that she did not know that the instrument was anything more than a two years' extension of their indebtedness to Mrs. Williams; that she did not know anything about a trust being in it. Appellant testified further that the notary told her that she would either have to sign the deed of trust or suffer a foreclosure of the mechanic's lien on her property. Appellant's contention here is that the instrument was not properly explained to her and that she was not asked specifically if she had willingly signed the same and did not wish to retract it. The notary was asked several questions with respect to his explanations to appellant. On direct examination by appellant the notary testified:

"Q. After she got through signing and everything through did you ask if she wanted to retract it? A. No. I took her acknowledgment.

"Q. You didn't ask her if she wanted to retract it? A. I know what the acknowledgment is and that is what I read to her.

"Q. Ask if you asked her if she wanted to retract it, and your answer was no. That is all."

This same witness under examination by appellee's counsel, testified further:

"Q. Tell us how you took her acknowledgment A. I took Albert Birdwell's acknowledgment first. Then called Lula out in the hall and explained to her what she had signed and read the acknowledgment to her, and * * *.

"Q. You read the acknowledgment out to her. A. Yes, sir.

"Q. The acknowledgment you read to her, is it the same one you signed? A. Yes, sir.

"Q. Now, as a part of that acknowledgment, it says she declared she willingly signed the same for the purposes and consideration therein expressed. Did you read that out? A. I read the entire acknowledgment.

"Q. What did she say to that part whether she had willingly signed it? A. Yes, sir, she did.

"Q. Did you read that part where she said she did not wish to retract it? A. I read the whole acknowledgment.

"Q. Did she say she wished to retract it? A. No. She acknowledged like I read it to her."

There is no contention but that appellant's acknowledgment was taken separate and apart from her husband and there is no testimony by her to the effect that she was not asked the proper question by the notary at the time she executed the deed of trust. Her main contention seems to be that she thought the instrument was a two years' extension of her indebtedness and did not know it contained a trust provision. It may be said here that the deed of trust in fact amounted to a two years' extension of her indebtedness and saved her from an immediate foreclosure and sale under the existing lien which was due and unpaid. In questions of this character it seems to be well settled that where a party appears before a notary and invokes his jurisdiction

the uncorroborated statements of the party seeking to strike down the acknowledgment are insufficient to successfully attack the certificate. Robertson v. Vernon et ux., Tex.Com.App., 12 S.W.2d 991; Texas Osage Co-op. Royalty Pool v. Kemper, Tex. Civ.App., 170 S.W.2d 849, writ refused and cases there cited.

It is said in Texas Osage Co-op. Royalty Pool v. James et ux., Tex.Civ.App., 129 S.W.2d 327, 328, that "No rule of law is better settled in Texas than the one that, in the absence of fraud or imposition, the certificate of a notary or officer taking the acknowledgment of a married woman is conclusive of the facts therein recited." Hartley v. Frosh, 6 Tex. 208. See also Ward v. Weaver, Tex.Com.App., 34 S.W.2d 1093. No fraud or imposition is shown by this record on the part of either the notary or Mrs. Williams, beneficiary in the deed of trust. Granting that appellant did not know of the trust provision in the deed of trust, and thought that it was merely an extension of payment of the indebtedness, there is no evidence in this record that Mrs. Williams was ignorant of the provision in the deed of trust. In such situation the misunderstanding on the part of appellant alone of the contents of the deed of trust would not vitiate the instrument in the absence of fraud or imposition on the part of the other parties to the deed of trust. In Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 450, by the Commission of Appeals, opinion adopted by the Supreme Court, it is said: "In the absence of fraud or inequitable conduct, a written instrument will not be reformed on account of mistake, unless the mistake is mutual; that is, a mistake common to both parties, both laboring under the same misconception in respect to the terms of the instrument (Citing authorities).

"The presumption arose from the lease that it represented the true agreement and intention of the parties; and the burden rested upon defendants in error to prove the alleged mistake and that it was mutual."

■ Appellant's second point is that the deed of trust was void because it was without consideration to support it. The deed of trust recited that it was given "in re-

newal and extension of the following liens and items of indebtedness: (1) the unpaid balance upon the mechanic's lien indebtedness originally payable to Joe Smith * * dated August 3, 1919; (2) taxes paid by the party of the third part (Williams), on the above described land at the special instance and request of the parties of the first part. The party of the third part is being given and is hereby granted expressly a good and valid lien to secure the payment of all amounts she has thus paid in the discharge of tax obligations against the above described lands." The deed of trust also described the note as representing the total amount due on the mechanic's lien indebtedness and taxes paid upon the 20 acres of land. The appellant testified that she knew that she owed something on the original indebtedness at the time she executed the deed of trust lien and note in September, 1940. In the light of this admission and the undisputed fact of the payment of taxes on the land by Williams and wife a sufficient consideration is shown to support the deed of trust and the trustee's sale under it. W. C. Belcher Land Mortgage Co. v. Taylor, Tex.Com.App., 212 S.W. 647; Adcock v. National Loan & Investment Co., Tex.Civ.App., 96 S.W.2d 530; E. Y. Chambers & Co. v. Little, Tex.Civ.App., 21 S.W.2d 17, writ refused; Price v. McAnelly, Tex.Civ.App., 287 S.W. 77.

■ Appellant next contends that the sale under the deed of trust was void because no cash or other consideration passed in connection with the trustee's sale; that the trustee named in the deed of trust had no authority to sell the land for the reason he was not requested by the beneficiary in the deed of trust or the owner of the indebtedness to initiate and conduct the sale, and that the sale was void for the further reason that no notices were posted prior to such sale as required by the law and the deed of trust. In our opinion the facts do not substantiate the conclusion that the sale was deficient in the particulars above complained of. The trustee testified that he did not remember specifically who asked him to make the sale. The trustee with respect to the request for the sale testified: "Q. Did the request either come from Ray Gaston or Mrs. Williams' attorney? A. Yes, sir." With respect to posting of notices the trustee stated that he did not personally post the notices and he did not know of his own knowledge that they were posted but that he heard them read. The testimony shows that Ray Gaston bought in the property at the trustee's sale for appellee Kidd, he did not pay any cash, "he presumed that the note had been cancelled." The price bid by Gaston for the property was the exact amount owing on the property. These facts, in our opinion, do not support the contentions advanced by appellant. They furnish no positive proof of a failure of the trustee to do the acts required of him under the deed of trust respecting the sale of the property, but tend to uphold the sale. Moreover, these contentions are foreclosed by the following recitals in the deed of trust: "It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the truth of the matters therein stated and all prerequisites to said sale shall be presumed to have been performed." The deed by the trustee recited a consideration in the exact amount as that owing under the deed of trust. It recited proper notice had been given and posted and it also recited a request by the beneficiary to make the sale. In such circumstances the presumption obtains that all these things recited to have been performed in the trustee's deed were performed, and the presumption will obtain until it is stricken down by competent testimony. As heretofore stated, there is not sufficient testimony in this record to overcome the presumption expressly provided in the deed of trust and carried forward by the recitations in the trustee's deed. Adams v. Zellner, 107 Tex. 653, 183 S.W. 1143; Natali v. Witthaus, 134 Tex. 513, 135 S.W.2d 969; McFarlane v. Whitney, 134 Tex. 394, 134 S.W.2d 1047, and cases there cited.

■ Appellant's point three asserts that the trial court erred in peremptorily instructing the jury to find for plaintiff "because the evidence showed that no cash or other consideration passed in connection with the sale of the land." As heretofore pointed out, the trustee's deed recites a con-

sideration in the exact amount of the indebtedness owing under the deed of trust. Gaston who purchased the property at the sale for appellee Kidd testified that no money was ever paid but "he presumed after that sale was over the note was cancelled out." No one else testified about the payment of the consideration recited in the deed. Although Gaston purchased the property at the trustee's sale in the name of appellee Kidd, it is undisputed that Kidd is holding the property for Mrs. Williams, the beneficiary in the deed of trust. She held the note and as far as this record reveals was claiming nothing against appellant on the note at the time of the trial below. Appellant has wholly failed to show that the note has not been cancelled. Mrs. Williams' claim to the property by virtue of the trustee's sale would indicate strongly that the note is cancelled. She certainly cannot claim the land under the trustee's sale and assert the debt evidenced by the note. Thomason v. Pacific Mutual Ins. Co. of California, Tex.Civ.App., 74 S.W.2d 162, writ refused; Puntney v. Moseley, Tex. Civ.App., 237 S.W. 1116, writ dismissed.

We have carefully examined all other points advanced by appellant in the light of the entire record and have reached the conclusion that they are without merit. The trial court was correct in granting the peremptory instruction to the jury to find in favor of appellee. The evidence is insufficient to support appellant's claims. Therefore the judgment of the trial court is in all things affirmed.

Affirmed.